UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Carrie A. Johnson,

Plaintiff,

vs.

LaSalle Bank National
Association,

Defendant.          Civ. No. 08-5127 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motion of the Plaintiff Carrie A. Johnson to Remand

this matter to the Minnesota District Court for Clay County.  See, Docket No. 9.  A

Hearing on the Motion was conducted on November 20, 2008, at which time, the

Plaintiff appeared pro se, and the Defendant LaSalle Bank National Association

appeared by Eldon J. Spencer, Jr., Esq.  At the time of the Hearing, we requested

additional briefing as to the preclusive effect, if any there be, of Johnson v. LaSalle

Bank National Association, Civ. No. 08-686 (DWF/RLE)("Johnson I"),[1] 2008 WL 2437434 (D. Minn., June 12, 2008), and subsequently, we took the matter under advisement on December 8, 2008, when the final submission was received. For the reasons which follow, we recommend that the Plaintiff's Motion be granted.

## II.  Factual and Procedural History

In this action, the Plaintiff filed suit in the Minnesota District Court for Clay County in order to quiet title to her foreclosed property, and she alleged violations of her Fifth, Seventh, and Fourteenth Amendment rights, as well as certain of her rights as may be secured by the Northwest Ordinance of 1787.[2] See, Complaint, Docket No. 1-2, at pp. 10-15. In addition, the Plaintiff requests injunctive relief, and she asserts a claim for an intentional infliction of emotional distress. Id. at pp. 33-36. The

---

[1]In Johnson I, the Plaintiff brought the same claims against the Defendant as she has in this action. See, Johnson I, Docket No. 1.

[2]In addition, the Plaintiff alleges that the Defendant has no lawful claim to her property, that her property was patented, that the mortgage contract and note were fraudulent, that the Defendant has not abided by the Fair Debt Collection Practices Act, and that the Defendant has not endured any financial loss. See, Complaint, Docket No. 1-2, at pp. 16-32.

Defendant subsequently removed this action to this Court, and filed certain Counterclaims. See, Docket Nos. 1 & 2. The facts may be briefly summarized.

On March 26, 2004, the Plaintiff and her husband, Brendon Johnson, executed a promissory note, and mortgage, in connection with the purchase of their home. See, Answer, Docket No. 2, at p. 10. The original payee/mortgagee was Aames Funding Corporation d/b/a Aames Home Loans ("Aames"). Id. On September 27, 2004, Aames assigned the note, and the mortgage, to EMC Mortgage Corporation ("EMC") which, in turn, sold the mortgage to Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates, Series 2004-2 ("the Trust").[3] See, Docket No. 1-5, at pp. 5, 8; Answer, supra at p. 10.

On approximately October 14, 2005, the Johnsons filed for bankruptcy. See, Answer, supra at p. 10. In their bankruptcy filing, the Johnsons listed the note as a secured debt, but they failed to list any claims, or causes of action, as assets. See, Answer, supra at pp. 10-11; Johnson I, Affidavit of Eldon Spencer, Jr. ("Spencer

---

[3]EMC is the authorized agent for the Defendant, which is the trustee for the Trust. See, Johnson I, Affidavit of Eldon Spencer, Jr. ("Spencer Aff."), Docket No. 7, at ¶ 2. The Defendant ,and EMC, are parties to a Pooling and Servicing agreement, under which EMC is required to represent and protect the interests of the Trust. See, Answer, supra at p. 10; Spencer Aff., supra at ¶2.

Aff."), Docket No. 7, Exhibit A. In addition, in their bankruptcy, the Johnsons' schedules reported that they intended to retain the property conveyed with the mortgage. Id. However, the discharge of the underlying indebtedness on the property forfeited the Johnsons' rights in the property, other than their statutory right of redemption. Id.

After the Johnsons' bankruptcy, EMC gave notice of its intent to foreclose the Johnsons' property. See, Answer, supra at p. 11. On February 23, 2006, the Johnsons sought an Order to Show Cause, from the United States Bankruptcy Court for the District of Minnesota, which would require an explanation as to why the mortgage had not been discharged. Id. In response, EMC argued that it was not trying to collect on the underlying debt, but was simply enforcing the mortgage. See, Answer, supra at p. 11; Johnson I, Affidavit of Lawrence Wilford ("Wilford Aff."), Docket No. 6, Exhibit A at 2-5. The Court agreed with EMC, and denied the Johnsons' Motion. See, Answer, supra, Exhibit A at 1.

In February of 2007, EMC began foreclosure proceedings by advertisement. See, Johnson I, Wilford Aff., supra, Exhibit B. For six (6) consecutive weeks, EMC published notice of the foreclosure sale in the Hawley Herald newspaper, which is located in Hawley, Minnesota. Id. At the foreclosure sale, the Defendant was the

successful bidder, and the Johnsons' statutory right of redemption terminated on October 12, 2007.  See, <u>Answer</u>, supra at p. 11; <u>Johnson I</u>, <u>Wilford Aff.</u>, supra, Exhibit B.

On February 15, 2008, the Johnsons and Harvey McClain ,who is related to the Plaintiff, filed <u>Johnson I</u> against the Defendant, EMC, and the Trust, in the Minnesota District Court for Clay County.  See, <u>Johnson I</u>, <u>Docket No. 1-2</u>.  The Defendant, through EMC, subsequently removed <u>Johnson I</u> to this Court and, on June 12, 2008, the District Court, the Honorable Donovan W. Frank presiding, dismissed <u>Johnson I</u> with prejudice for lack of subject matter jurisdiction, owing to the <u>Rooker/Feldman</u> doctrine.  See, <u>Johnson I</u>, <u>Docket No. 18</u>; <u>Plaintiff's Memorandum in Support</u>, <u>Docket No. 10</u>, Exhibit B; see also, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

Thereafter, on August 13, 2008, the Plaintiff filed this action in the Minnesota District Court for Clay County and, on September 8, 2008, the Defendant removed the action to this Court.  See, <u>Docket No. 1</u>.  The Plaintiff now moves to remand this matter to State Court.  The Plaintiff relies upon the District Court's Order, in <u>Johnson I</u>, in arguing that we do not have subject matter jurisdiction over this action, because

of the <u>Rooker/Feldman</u> doctrine.  See, <u>Plaintiff's Memorandum in Support</u>, supra at 6-7.

For its part, the Defendant contends that the District Court erred in <u>Johnson I</u>, because of the Court's mistaken belief that the Defendant had initiated the Plaintiff's foreclosure through State Court proceedings, rather than by advertisement.  See, <u>Defendant's Memorandum in Opposition</u>, <u>Docket No. 11</u>, at 5-13. As a result, the Defendant argues that the <u>Rooker/Feldman</u> doctrine does not bar this Court's jurisdiction, because there was no prior State Court Judgment.  <u>Id.</u>  In addition, the Defendant asserts that the District Court's Order, in <u>Johnson I</u>, does not preclude our jurisdiction in this action. See, <u>Defendant's Supplemental Memorandum</u>, <u>Docket No. 26</u>, at 2-5.  Given this factual and procedural backdrop, we turn to the parties' arguments.

Discussion

A.    <u>The Plaintiff's Motion to Remand.</u>  In relevant part, Title 28 U.S.C. §1441(a), which governs the removal of State Court matters to Federal Court, provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original

> jurisdiction, may be removed by the defendant or the
> defendants, to the district court of the United States for the
> district and division embracing the place where such action
> is pending.

Following removal, a case will be remanded to State Court "'[i]f at any time before

final judgment it appears that the district court lacks subject matter jurisdiction * *

*.'"  Lundeen v. Canadian Pacific Railway Co., 342 F. Supp.2d 826, 828 (D. Minn.

2004), quoting Title 28 U.S.C. §1447(c).  "In reviewing a Motion to Remand, the

District Court must resolve all doubts in favor of a remand to State Court, and the

party opposing a remand bears the burden of establishing Federal jurisdiction."

Peterson v. BASF Corporation, 12 F. Supp.2d 964, 968 (D. Minn. 1998), citing In re

Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993);

Masepohl v. American Tobacco Co., 974 F. Supp. 1245, 1249 (D. Minn. 1997).

Here, the Plaintiff contends that the Rooker/Feldman doctrine prohibits this

Court from exercising subject matter jurisdiction over the action.

B.     The Application of the Rooker/Feldman Doctrine.

1.     Standard of Review.  Rule 12(h)(3), Federal Rules of Civil

Procedure, requires that, "[w]henever it appears by suggestion of the parties or

otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss

- 7 -

the action."  "Subject matter jurisdiction * * * is a threshold requirement which must be assured in every federal case."  Turner v. Armontrout, 922 F.2d 492, 293 (8th Cir. 1991); see also, Riley v. United States, 486 F.3d 1030, 1031-32 (8th Cir. 2007); Green Acres Enterprises, Inc. v. United States, 418 F.3d 852, 856 (8th Cir. 2005).

As established by the Rooker/Feldman doctrine, Federal Courts do not have subject matter jurisdiction over challenges to State Court decisions in judicial proceedings.  See, Rooker v. Fidelity Trust Co., supra at 416; District of Columbia Court of Appeals v. Feldman, supra at 476; see also, Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283-88 (2005); Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000), cert. denied, 531 U.S. 1183 (2001); Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997).  The Rooker/Feldman doctrine provides that, except for Federal Habeas Corpus Petitions, "lower federal courts lack subject matter jurisdiction over challenges to state court judgments."  Mosby v. Ligon, 418 F.3d 927, 931 (8th Cir. 2005).

With minor exceptions, which do not apply here, the Federal review of a State Court determination may only be obtained in the United States Supreme Court.  See, District of Columbia Court of Appeals v. Feldman, supra at 476, citing Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296 (1970);

Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995); see also, Title 28 U.S.C. §1257.   The Supreme Court, in Feldman, formulated a general rule which distinguishes general constitutional challenges to State laws and regulations -- over which the Federal Courts have jurisdiction -- from requests for review of specific State Court decisions, over which they have no jurisdiction.   As explained by the Court, when the Federal claims are "inextricably intertwined with" State Court "decisions, in judicial proceedings," they fall outside of the Federal Court's jurisdiction.   District of Columbia Court of Appeals v. Feldman, supra at 486-87.

Under this test, a Federal Court lacks subject matter jurisdiction "if the relief requested in the federal action would effectively reverse the state court decision or void its ruling."   Charchenko v. City of Stillwater, supra at 983; see also, Bechtold v. City of Rosemount, supra at 1065.   Stated otherwise, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment."   Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)(Marshall, J., concurring).

Within this Circuit, even when a litigant has not had a fair opportunity to litigate a claim in the prior State Court proceeding, the Rooker/Feldman jurisdictional

bar still applies, so long as the merits of the Federal action are "inextricably inter-twined" with the State Court decision.  See, <u>In re Goetzman</u>, 91 F.3d 1173, 1178 (8th Cir. 1996), cert. denied <u>sub nom.</u>, <u>Goetzman v. Agribank, FCB</u>, 519 U.S. 1042 (1996); <u>Postma v. First Federal Savings & Loan</u>, 74 F.3d 160, 162 (8th Cir. 1996); but see, <u>Centifanti v. Nix</u>, 865 F.2d 1422, 1433 (3rd Cir. 1989)(failure to raise constitutional claims in State Supreme Court does not bar District Court from hearing those claims when plaintiff did not have "realistic opportunity to fully and fairly litigate" claims in State Court); <u>Raddatz v. Beaubien</u>, 880 F. Supp. 500, 503 (E.D. Mich. 1995)("[T]here is an exception to the <u>Rooker/Feldman</u> doctrine in cases where the state court judgment is alleged to have been procured through fraud, deception, accident, or mistake.").  As pertinent here, the <u>Rooker/Feldman</u> doctrine is applicable to claims requesting injunctive or declaratory relief.  See, <u>Keene Corp. v. Cass</u>, 908 F.2d 293, 296 (8th Cir. 2000).

Concerned that lower Courts had construed the <u>Rooker/Feldman</u> doctrine "to extend far beyond the contours of the <u>Rooker</u> and <u>Feldman</u> cases," the Supreme Court recently clarified that the <u>Rooker/Feldman</u> doctrine is "confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., supra at 284; see, Lance v. Dennis, 546 U.S. 459, 460 (2006); Dornheim v. Sholes, 430 F.3d 919, 923 (8th Cir. 2005), cert. denied, 547 U.S. 1135 (2006).   Under this framework, the Rooker/Feldman doctrine will only apply in those instances where "the federal suit is commenced after the state court proceedings have ended." Dornheim v. Sholes, supra at 923.

In reaching its holding, the Supreme Court, in Exxon-Mobil, noted that the "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law," and that "[p]reclusion, of course, is not a jurisdictional matter." Id. at 293.   Accordingly, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party * * *, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id., quoting, GASH Associates v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993); accord Noel v. Hall, 341 F.3d 1148, 1163-64 (9th Cir. 2003).   Since deciding Exxon-Mobil, the Supreme Court has further reiterated that "Rooker-Feldman is not simply preclusion by another name," and "[i]ncorporation of preclusion principles into

- 11 -

Rooker-Feldman risks turning that limited doctrine into a uniform **federal** rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." Lance v. Dennis, supra at 1202-03 [emphasis in original].

In the wake of the Supreme Court's decisions in Exxon-Mobil, and Lance, several Circuit Courts of Appeals have reexamined their Rooker/Feldman jurisprudence. Those Courts have invariably determined that the doctrine is limited to situations where the plaintiff seeks redress for injuries that were caused by a State Court Judgment. See, McCormick v. Braverman, 451 F.3d 382, 392 (6th Cir. 2006), cert. denied, --- U.S. ---, 128 S.Ct. 41 (2007); Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3rd Cir. 2006); Bolden v. City of Topeka, 441 F.3d 1129, 1145 (10th Cir. 2006); Davani v. Virginia Department of Transportation, 434 F.3d 712, 718 (4th Cir. 2006); Hoblock v. Albany County Board of Elections, 422 F.3d 77, 87 (2nd Cir. 2005); Galibois v. Fisher, 174 Fed. Appx. 579, 579-81 (1st Cir. 2006); see also, Noel v. Hall, supra at 1163; Jensen v. Foley, 295 F.3d 745, 747-48 (7th Cir. 2002).

Indeed, the Court of Appeals for the Second Circuit has determined that the requirement set forth in Exxon-Mobil, that "federal plaintiffs are not subject to the Rooker-Feldman bar unless they complain of an injury caused by a state judgment  *

- 12 -

* * is the core requirement from which others derive."  <u>Hoblock v. Albany County</u>

<u>Board of Elections</u>, supra at 87 [emphasis in original].  In reaching this conclusion,

the Court explained, as follows:

> First, this requirement explains why a federal plaintiff
> cannot escape the Rooker-Feldman bar simply by relying
> on a legal theory not raised in state court.  Suppose a state
> court, based purely on state law, terminates a father's
> parental rights and orders the state to take custody of his
> son. If the father sues in federal court for the return of his
> son on grounds that the state judgment violates his federal
> substantive due-process rights as a parent, he is
> complaining of an injury caused by the state judgment and
> seeking its reversal.  This he may not do, regardless of
> whether he raised any constitutional claims in state court,
> because only the Supreme Court may hear appeals from
> state-court judgments.
>
> Further, by focusing on the requirement that the state-court
> judgment be the source of the injury, we can see how a suit
> asking a federal court to "den[y] a legal conclusion"
> reached by a state court could nonetheless be independent
> for <u>Rooker-Feldman</u> purposes.  Suppose a plaintiff sues his
> employer in state court for violating both state anti-
> discrimination law and Title VII and loses.  If the plaintiff
> then brings the same suit in federal court, he will be seeking
> a decision from the federal court that denies the state
> court's conclusion that the employer is not liable, but he
> will not be alleging injury from the state judgment. Instead,
> he will be alleging injury based on the employer's
> discrimination.  The fact that the state court chose not to
> remedy the injury does not transform the subsequent federal

suit on the same matter into an appeal, forbidden by
<u>Rooker-Feldman</u>, of the state-court judgment.
<u>Id.</u> at 87-88 [emphasis added].

Given these precepts, the "inextricably intertwined" language, which is set forth in

<u>Feldman</u>, "does not create an additional legal test for determining when claims

challenging a state-court decision are barred, but merely states a conclusion:  if the

state court loser seeks redress in the federal district court for the injury caused by the

state court decision, his federal claim is, by definition, 'inextricably intertwined' with

the state court decision, and is therefore outside of the jurisdiction of the federal

district court." <u>Davani v. Virginia Department of Transportation</u>, supra at 719.

As recently explained by our own Court of Appeals:

> A district court is not deprived of jurisdiction over every
> case in which a plaintiff seeks a result different from the
> one it obtained in state court * * * [citation to <u>Exxon Mobil</u>
> omitted.]  Rather, <u>Rooker-Feldman</u> is implicated in that
> subset of cases where the losing party in a state court action
> subsequently complains about that judgment and seeks
> review and rejection of it.

<u>Skit Intern., Ltd. v. DAC Technologies of Arkansas, Inc.</u>, 487 F.3d 1154, 1157 (8th
Cir. 2007).

Based on the overwhelming weight of the authorities we have cited, we conclude that,

under <u>Exxon-Mobil</u>, the <u>Rooker/Feldman</u> doctrine only applies in those instances

where the plaintiff seeks redress for an injury caused by the State Court decision itself.

- 14 -

As a consequence, the Rooker/Feldman doctrine applies to "[a] claim seeking redress for an injury caused by the state court decision itself -- even if the basis of the claim was not asserted to the state court," since such a claim "asks the federal district court to conduct an appellate review of the state court decision." Fearing v. City of Lake St. Croix Beach, 2006 WL 695548 at *4 (D. Minn., March 17, 2006). Moreover, "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by the state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Id. at *5, quoting Hoblock v. Albany County Board of Elections, supra at 88.

     2.    Legal Analysis.  In Johnson I, the District Court determined that it lacked subject matter jurisdiction, by application of the Rooker/Feldman doctrine, based upon a mistaken belief that the Defendant had initiated foreclosure proceedings in the Minnesota Court system.  See, Johnson I, Docket No. 18, at 7, 2008 WL 2437434 at *1.  The Court explained that the Johnsons' claims were barred by the Rooker/Feldman doctrine "because [the Johnsons'] suit is a de facto appeal of the state court foreclosure action" and, as a result, the Court concluded that, since "[the Johnsons] could succeed in this suit only if this Court overturned the state court judgment," the claims were barred under Rooker/Feldman.  See, Johnson I, Docket

No. 18, at pp. 7-8, 2008 WL 2437434 at *3.   However, the Defendant actually

foreclosed upon the Johnsons' property by advertisement, which is a non-judicial

procedure.

As the Minnesota Court of Appeals explained, in Norwest Bank Hastings Nat'l

Ass'n v. Franzmeier, 355 N.W.2d 431, 433 (Minn.App. 1984):

> The Minnesota legislature has provided for two types of
> mortgage foreclosure proceedings:   foreclosure by
> advertisement and foreclosure by action.   A foreclosure by
> advertisement takes place without recourse to the courts,
> and is a proceeding in pais, ex parte and in rem.   Minn.Stat.
> ch. 580; Morris v. Penn Mutual Life Insurance Co., 196
> Minn. 403, 265 N.W. 278 (1936).   A foreclosure by action
> requires a judicial decree and approval of sale and is an in
> personam proceeding, although it is in the nature of a
> proceeding in rem since its purpose is to enforce a lien on
> the mortgaged property.   Minn.Stat. ch. 581; Winne v.
> Lahart, 155 Minn. 307, 193 N.W. 587 (1923).

Under Minnesota Statutes Section 580.03, a foreclosure by advertisement requires that

"six weeks published notice * * * be given that such mortgage will be foreclosed by

sale of the mortgaged premises or some part thereof * * * ."   Minnesota Statutes

Section 580.03.   The notice must specify the following:

> (1)   the name of the mortgagor, the mortgagee, each
> assignee of the mortgage, if any, and the original or
> maximum principal amount secured by the mortgage;

- 16 -

(2)    the date of the mortgage, and when and where recorded, except where the mortgage is upon registered land, in which case the notice shall state that fact, and when and where registered;

(3)    the amount claimed to be due on the mortgage on the date of the notice;

(4)    a description of the mortgaged premises, conforming substantially to that contained in the mortgage;

(5)    the time and place of sale;

(6)    the time allowed by law for redemption by the mortgagor, the mortgagor's personal representatives or assigns; and

(7)    if the party foreclosing the mortgage desires to preserve the right to reduce the redemption period under section 582.032 after the first publication of the notice, the notice must also state in capital letters:   THE TIME ALLOWED BY LAW FOR REDEMPTION BY THE MORTGAGOR, THE MORTGAGOR'S PERSONAL REPRESENTATIVES OR ASSIGNS, MAY BE REDUCED TO FIVE WEEKS IF A JUDICIAL ORDER IS ENTERED UNDER MINNESOTA STATUTES, SECTION 582.032, DETERMINING, AMONG OTHER THINGS, THAT THE MORTGAGED PREMISES ARE IMPROVED WITH A RESIDENTIAL DWELLING OF LESS THAN FIVE UNITS, ARE NOT PROPERTY USED IN AGRICULTURAL PRODUCTION, AND ARE ABANDONED.

Minnesota Statutes Section 580.04.

- 17 -

Foreclosure by advertisement also requires that, "at least four weeks before the appointed time of sale a copy of such notice shall be served in like manner as a summons in a civil action in the district court upon the person in possession of the mortgaged premises, if the same are actually occupied." Minnesota Statutes Section 580.03.

After the statutory notice has been provided, a public sale is made in the County in which the property is located. See, Minnesota Statutes Section 580.06. Minnesota Courts have consistently held that, even though a defaulting mortgagor is not entitled to a Hearing prior to the public sale, a foreclosure by advertisement satisfies the requirements of Due Process. See, Sain v. Geske, 2008 WL 2811166 at *13 (D. Minn., July 17, 2008)(finding that a mortgagor's Due Process rights are not violated if the statutory requirements of Minnesota Statutes Section 580.03 are met), citing Guidarelli v. Lazaretti, 233 N.W.2d 890, 892 (Minn. 1975).

Here, the Plaintiff does not contend that the Defendant failed to fulfill the statutory requirements for foreclosure by advertisement, and indeed, the Record establishes that the Plaintiff received the required statutory notice. For six (6) consecutive weeks, the Defendant published notice of the foreclosure sale in the Hawley Herald newspaper, which included all of the details required by Minnesota

Statutes Section 580.04.   See, <u>Johnson I</u>, <u>Wilford Aff.</u>, supra, Exhibit B at 2.   On March 13, 2007, four (4) weeks prior to the date of the expected sale, the Plaintiff was served with notice of the foreclosure sale.   <u>Id.</u>, Exhibit B at 5-6.   On April 12, 2007, the Plaintiff's home was subsequently sold, at auction, to the Defendant.   <u>Id.</u>, Exhibit B at 7.

In the State Court portion of <u>Johnson I</u>, the Plaintiff never sought a State Court Judgment to prevent the foreclosure sale, or to challenge the non-judicial foreclosure by advertisement.   As we have noted, the  <u>Rooker/Feldman</u> doctrine "applies only to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  <u>Riehm v. Engelking</u>, 538 F.3d 952, 964 (8th Cir. 2008), quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, supra at 284.   Accordingly, because the Plaintiff has not alleged any injury from a State Court Judgment, the <u>Rooker/Feldman</u> doctrine was inapplicable in <u>Johnson I</u>, is also inapplicable here, and therefore, does not bar our jurisdiction over this action.[4]

---

[4]The Defendant also asserts that the statutory foreclosure by advertisement is a form of administrative proceeding, which is not governed by the <u>Rooker/Feldman</u> doctrine unless the administrative decision is challenged in State Court.   See, <u>Defendant's Memorandum in Opposition</u>, supra at 8-10.

(continued...)

Cf., <u>Burgmeier v. Agribank FCB</u>, 1995 WL 15140 at *2 (Minn.App., January 17, 1995), rev. denied (Minn., March 14, 1995), cert. denied, 516 U.S. 819 (1995)(Because prior failed attempts to foreclose by advertisement occurred "without recourse to the courts," bringing another foreclosure by advertisement was not barred by collateral estoppel or res judicata).

However, given the dismissal with prejudice in <u>Johnson I</u>, which was not contested by the Defendant at that time, we turn to consider whether that Order precludes the parties from relitigating the issue of subject matter jurisdiction.

C.     <u>Res Judicata and Collateral Estoppel</u>.

---

[4](...continued)

Our Court of Appeals has held that "[a] litigant may challenge in a federal district court action the constitutionality of an executive action, including a state administrative agency determination, even though he may not argue that a state court decision is unconstitutional." <u>Prince v. Arkansas Board of Examiners in Psychology</u>, 380 F.3d 337, 340-42 (8th Cir. 2004), citing <u>Verizon Maryland, Inc. v. Public Serv. Comm'n</u>, 535 U.S. 635, 644 n. 3 (2002); see also, <u>Narey v. Dean</u>, 32 F.3d 1521, 1525 (11th Cir. 1994)("[T]he Rooker/Feldman doctrine, unlike that of res judicata, applies only to state court decisions, not to state administrative decisions."), appealed on other grounds, citing <u>Ivy Club v. Edwards</u>, 943 F.2d 270, 984 (3rd Cir. 1991)(noting that <u>Rooker/Feldman</u> applies to "state court decisions, as opposed to state administrative decisions.")[citation omitted], cert. denied <u>sub. nom., Del Tufo v. Ivy Club</u>, 503 U.S. 914 (1992).   However, since the Plaintiff never challenged the foreclosure by advertisement in State Court, we do not address the argument further.

1.      Standard of Review.   Since the District Court dismissed <u>Johnson I</u>, Federal res judicata principles govern our analysis here.  See, <u>Heck v. Humphrey</u>, 512 U.S. 477, 488 n. 9 (1994); <u>Canady v. Allstate Ins. Co.</u>, 282 F.3d 1005, 1014 (8th Cir. 2002)("[I]t is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum."), quoting <u>Hillary v. Trans World Airlines, Inc.</u>, 123 F.3d 1041, 1043 (8th Cir. 1997); <u>Poe v. John Deere Co.</u>, 695 F.2d 1103, 1105 (8th Cir. 1982).  "'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" <u>Gurley v. Hunt</u>, 287 F.3d 728, 731 (8th Cir. 2002), quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980).

"The test applied to determine whether res judicata bars litigation of a claim is: (1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the judgment was a final judgment on the merits, and (3) whether the same cause of action and same parties or their privies were involved in both cases." <u>Id.</u>, citing <u>De Llano v. Berglund</u>, 183 F.3d 780, 781 (8th Cir. 1999); see also, <u>Leonard v. Southwestern Bell Corp. Disability Income Plan</u>, 341 F.3d 696, 701 (8th Cir. 2003); <u>Canady v. Allstate Ins. Co.</u>, supra at 1014; <u>Black Clawson Co., Inc. v. Kroenert Corp.</u>, 245 F.3d 759, 762 (8th Cir. 2001); <u>Lundquist v. Rice Memorial Hosp.</u>, 238 F.3d 975,

977 (8ᵗʰ Cir. 2001). "Final judgment on the merits precludes the relitigation of a claim on any grounds raised before or on any grounds which could have been raised in the prior action," and a plaintiff cannot assert a claim on a theory of recovery when the same claim has already been rejected by a Court based upon another theory. Poe v. John Deere Co., supra at 1105 (citing cases).

To determine if a plaintiff has stated distinct claims, we look to "whether or not proof of the same facts will support both actions, or to whether the wrong for which redress is sought is the same in both actions," and we examine the claims to see if they arise out of a common nucleus of operative facts. Id. at 1106, citing Woodbury v. Porter, 158 F.2d 194, 195 (8ᵗʰ Cir. 1946); United States v. Gurley, 43 F.3d 1188, 1195 (8ᵗʰ Cir. 1994), cert. denied, 516 U.S. 817 (1995). In addition, we look to see "'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" United States v. Gurley, supra at 1196, quoting Lane v. Peterson, 899 F.2d 737, 741 (8ᵗʰ Cir. 1990).

We also apply Federal law to determine whether the doctrine of collateral estoppel applies. See, Canady v. Allstate Ins. Co., supra at 1016; see also, Jaramillo v. Burkhart, 999 F.2d 1241, 1245 (8ᵗʰ Cir. 1993). "Collateral estoppel is appropriate

when:  (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action." Id., citing Wellons, Inc. v. T.E. Ibberson Co., 869 F.2d 1166, 1168 (8th Cir. 1989).

"Because the doctrine of collateral estoppel is not rigidly applied, the focus is on whether the application of collateral estoppel will work an injustice on the party against whom estoppel is urged." Oldham v. Pritchett, 599 F.2d 274, 279 (8th Cir. 1979)[citations omitted]; see also, Jeffers v. Convoy, 636 F.Supp. 1337, 1339 (D. Minn. 1986)("Because the doctrine of collateral estoppel is flexibly applied, the focus is on whether its application would work an injustice on the party against whom estoppel is urged."), citing Oldham v. Pritchett, supra at 279, and Tipler v. E.I. DuPont de Nemours and Co., Inc., 443 F.2d 125, 128 (6th Cir. 1971).

Under Federal law, there is no requirement that both parties be bound by the prior Judgment, and a party may "'rely on collateral estoppel even though he or she is not bound by the prior judgment if the party against whom it is used had a full and fair opportunity and incentive to litigate the issue in the prior action.'" Banks v.

International Union Electronic, Electrical, Technical, Salaried and Machine Workers, 390 F.3d 1049, 1054 (8th Cir. 2004), quoting Lane v. Peterson, supra at 741.

The Supreme Court has clarified that collateral estoppel can be used either offensively by a plaintiff, who is seeking to bar a defendant from litigating an issue that the defendant previously litigated against a different party, or defensively by a defendant, who seeks to prevent a plaintiff from asserting a claim that he has previously asserted, and lost, against another defendant. See, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 4 (1979). The defensive use of collateral estoppel, in particular, promotes judicial economy, as it "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" Id. at 330, citing Bernhard v. Bank of Am. Nat. Trust & Savings Ass'n,  122 P.2d 892, 895 (Calif. 1942).

Moreover, Courts may raise res judicata and collateral estoppel sua sponte so as to avoid judicial waste. See, Hanig v. City of Winner, S.D., 527 F.3d 674, 678 (8th Cir. 2008)(finding that the District Court had "properly invoked res judicata to avoid 'unnecessary judicial waste[.]'"), quoting Arizona v. California, 530 U.S. 392, 412 (2000), and citing Bechtold v. City of Rosemount, 104 F.3d 1062, 1068 (8th Cir. 1997); Transclean Corp. v. Jiffy Lube Intern., Inc., 474 F.3d 1298, 1308 (Fed. Cir. 2007)("Although the general rule is that claim preclusion and issue preclusion must

be pleaded, an exception exists where all relevant data and legal records are before the court and the demands of 'comity, continuity in the law, and essential justice' mandate invocation of preclusion principles."), cert. denied, --- U.S. ---, 128 S.Ct. 186 (2007); Scherer v. Equitable Life Assurances Society of United States, 347 F.3d 394, 400 (2nd Cir. 2003)(Courts may assert res judicata sua sponte)[citations omitted]; Meador v. McFaddin, 1999 WL 129938 at *1 (5th Cir. 1999)(noting that a Court may raise collateral estoppel sua sponte)[citations omitted], cert. denied, 531 U.S. 835 (2000); Doe v. Pfrommer, 148 F.3d 73, 80 (2nd Cir. 1998)(finding that District Court did not error in raising collateral estoppel sua sponte).

      2.   Legal Analysis.  As a threshold matter, neither party raised the question of collateral estoppel in their submissions, but that does not preclude our analysis of the issue for, as noted, a Court may raise the doctrine of collateral estoppel, sua sponte, in order to conserve scarce judicial resources.  For that precise reason, we raised the issue at the Hearing, and afforded the parties an opportunity to brief the question.

The question is whether the Defendant is collaterally estopped from relitigating the issue of subject matter jurisdiction, and the parties agree that the Defendant was a party to Johnson I, but the remaining elements of collateral estoppel are in dispute.

First, the Defendant argues that the same issue, which is now in dispute, was not the same issue decided in <u>Johnson I</u>, because the District Court dismissed <u>Johnson I</u> on the basis of the <u>Rooker/Feldman</u> doctrine, as well as standing principles.   See, <u>Defendant's Supplemental Memorandum</u>, supra at 4.  We disagree.

In its Order, the District Court dismissed <u>Johnson I</u> on the basis of the <u>Rooker/Feldman</u> doctrine.  See, <u>Johnson I</u>, <u>Docket No. 18</u>, at 7-8, 2008 WL 2437434 at *2.  However, the District Court also observed as follows:

> Defendant filed its motion to dismiss under Rule 12(b)(6) and requested summary judgment under Rule 12(d) and Rule 56, rather than moving for dismissal under Rule 12(b)(1), which lists lack of subject matter jurisdiction as a defense.  Defendant, however, also argued that Plaintiffs lacks standing.  If a plaintiff lacks standing, the district court lacks subject-matter jurisdiction and, therefore, a standing argument implicates Rule 12(b)(1).  Faibisch v. Univ. of Minn. 304 F.3d 797, 801 (8th Cir. 2002).

See, <u>Johnson I</u>, <u>Docket No. 18</u>, at 8, 2008 WL 2437434 at *4.

Although the District Court identified alternative bases for dismissal, its overall conclusion -- that the Court lacked subject matter jurisdiction over <u>Johnson I</u> -- remains unchanged, whether based upon standing, or the <u>Rooker/Feldman</u> doctrine.  See, <u>McCarney v. Ford Motor Company</u>, 657 F.2d 230, 233 (8th Cir. 1981) (characterizing "the issue of standing as a part of the concept of justiciability," and

noting that the "justiciability doctrine, for the purposes of claim preclusion, should be analyzed in the same way as subject matter jurisdiction."); <u>Media Technologies Licensing, LLC v. Upper Deck Co.</u>, 334 F.3d 1366, 1369-70 (Fed. Cir. 2003)(noting that standing is jurisdictional); <u>Univ. of Pittsburgh v. Varian Medical Systems, Inc.</u>, 2008 WL 5262797 at *5-6 (W.D. Pa., December 17, 2008)("However, whether deemed issue or claim preclusion, a dismissal for lack of subject matter jurisdiction does have a preclusive effect on subsequent litigation of that ground for dismissal, in this case lack of standing[.]").   Accordingly, both <u>Johnson I</u>, and this subsequent litigation, raise the same issue -- the Court's subject matter jurisdiction.

Next, both parties contend that District Court's dismissal of <u>Johnson I</u> cannot be considered a final adjudication on the merits, because the Court dismissed the action on the basis of the <u>Rooker/Feldman</u> doctrine.  We agree.  As noted, the Court in <u>Johnson I</u> entered a dismissed with prejudice, after determining that the Court lacked subject matter jurisdiction due to the <u>Rooker/Feldman</u> doctrine.  However, Rule 41(b), Federal Rules of Civil Procedure, provides as follows:

> **(b) Involuntary Dismissal: Effect.** * * * Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule -- except one for lack of jurisdiction * * * -- operates as an adjudication on the merits.

Federal Rules of Civil Procedure 41(b); see also, Ahmed v. United States, 147 F.3d 791, 797 (8th Cir. 1998)("Under Rule 41(b) of the Federal Rules of Civil Procedure, dismissal for lack of jurisdiction is not an adjudication on the merits * * * ."), citing Johnson v. Boyd-Richardson, 650 F.2d 147, 148 (8th Cir. 1981)("The Rule [41(b)] also provides, however, that when a dismissal is for "lack of jurisdiction," the effect is not an adjudication on the merits, * * * ."); McCarney v. Ford Motor Co., supra at 234 ("Rule 41(b) provides that any dismissal operates as an adjudication upon the merits unless it is a dismissal for lack of jurisdiction, * * * .").

As a consequence, the Court's Order, in Johnson I, was not a Judgment on the merits with respect to the Plaintiff's claims, resultantly, res judicata does not apply here.

However, the Court's decision does collaterally estop the relitigation of the same underlying issue -- subject matter jurisdiction.  In McCarney v. Ford Motor Co., supra at 232, and 234, the plaintiffs argued that res judicata and collateral estoppel did not bar their second action ("McCarney II"), even though their first action ("McCarney I") had been dismissed for a lack of standing.  The plaintiffs argued that res judicata and collateral estoppel were not applicable, because the decision in McCarney I was not on the merits.  Id. at 231-32, 234.  As we have noted, the Court first observed that issues of standing are part of the concept of justiciability, and that a "dismissal based on any of these concepts, which are quasi-jurisdictional, does not preclude a second action on the same claim if the justiciability problem can be overcome."  Id. at 233. [citation omitted].  However, the Court further explained that

"a decision to dismiss based on any of the doctrines under the justiciability heading should preclude relitigation of the same justiciability issue but not a second suit on the same claim even if arising out of the identical set of facts." Id.

Accordingly, if the plaintiffs, there, had re-filed their suit under the same cause of action, or theories of relief, then their suit "would have clearly been precluded by their earlier suit which decided the standing issue." Id. at 233-34. However, "where the second suit presents new theories of relief, admittedly based upon the same operative facts as alleged in the first action, it is not precluded because the first decision was not on the merits of the substantive claim." Id. at 234. As a result, the Court concluded "that a dismissal based upon a lack of standing is not 'on the merits' of the underlying substantive claim and is not a bar to asserting another theory of relief based upon the same operative facts[.]" Id.; see also, Kulinski v. Medtronic Bio-Medicus, Inc., 112 F.3d 368, 373 (8th Cir. 1997)(finding that, since the plaintiff had brought his second action under State law, rather than the Employee Retirement Income Security Act ("ERISA"), his claim was not barred, even if the State law claim was based on the same operative facts as the original ERISA claim).

The McCarney Court also considered whether collateral estoppel barred the plaintiffs' claims. Id. at 234. Since the issues presented by the plaintiffs were not

identical to the prior action, there was no final Judgment on the merits, and the plaintiffs' had not received a full and fair opportunity to be heard on their new theories, the Court concluded that collateral estoppel did not bar the plaintiffs' claims. Id. at 234-35.

In Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. Homestake Mining Co., 722 F.2d 1407, 1411 (8th Cir. 1984), the plaintiff relied upon the Court's decision in McCarney to argue that its first action ("Oglala I"), did not have res judicata or collateral estoppel effect on its second action ("Oglala II"), because Oglala I was dismissed for a lack of subject matter jurisdiction.[5] The Oglala Court disagreed

---

[5]The Defendant argues that Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. Homestake Mining Co., 722 F.2d 1407, 1411 (8th Cir. 1984), is inapplicable, because Oglala I resulted in a "final judgment." See, Defendant's Supplemental Memorandum, supra at 2. We disagree.

In Oglala I, our Court of Appeals affirmed the District Court's dismissal of the plaintiff's action for lack of subject matter jurisdiction. See, Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. United States, 650 F.2d 140, 143 (8th Cir. 1981). As noted by the Defendant, in Oglala II, the Court of Appeals observed that Oglala I "resulted in a final judgment that was affirmed by this Court[.]" See, Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. Homestake Mining Co., supra at 1411. However, the Court continued its analysis by stating that "the Oglala Sioux contend, however, that Oglala I, as affirmed by this Court, dismissing the action for lack of jurisdiction, has no res judicata effect on their present claim[.]" Id. Given this observation, and notwithstanding the Defendant's arguments to the contrary, it is apparent that the final Judgment, which was referenced by the Court of Appeals, was the District Court's dismissal for lack of subject matter jurisdiction. Accordingly, we

(continued...)

and noted that "[r]es judicata * * * applies to questions of jurisdiction as well as to other issues." Id., citing Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance Guaranty Association, 455 U.S. 691 (1982). The Court observed that the "[d]ismissal of a suit for lack of federal subject matter jurisdiction precludes relitigation of the same issue of subject matter jurisdiction in a second federal suit on the same claim." Id., citing 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure §4402, at 11. The Court observed that, "[s]ince in the present action the [plaintiff is] asserting identical claims and jurisdictional grounds as in Oglala I, this suit is barred." Id.

The Court also rejected the plaintiff's claim that, because Oglala II raised new theories, res judicata did not apply. Id. First, the Court underscored that a "dismissal based on lack of jurisdiction precludes a second action on the same claim unless 'the justiciability problem can be overcome.'" Id., citing McCarney v. Ford Motor Co., supra at 233. Accordingly, because the plaintiff's new theories, there, did not correct the jurisdictional problem, the court concluded that res judicata barred the plaintiff's

---

[5](...continued)
reject the Defendant's argument that Oglala I resulted in a final Judgment other than a dismissal for lack of subject matter jurisdiction.

claims.  Id. at 1411-12.  The Court further concluded that the plaintiffs' claims, there, were barred by collateral estoppel.  Id. at 1413.

Other Courts have also concluded that a dismissal for a lack of subject matter jurisdiction has preclusive effects on later jurisdictional determinations.  See, Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n. 9 (1982)("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment," and "[i]t has long been the rule that principles of res judicata apply to jurisdictional determinations -- both subject matter and personal.")[citations omitted]; North Georgia Elec. Membership Corp. v. City of Calhoun, Ga., 989 F.2d 429, 433 (11th Cir. 1993)("Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims."); Winslow v. Walters, 815 F.2d 1114, 1116 (7th Cir. 1987)("A ruling granting a motion to dismiss for lack of subject matter jurisdiction is not on the merits; its res judicata effect is limited to the question of jurisdiction."); Daigle v. Opelousas Health Care, Inc., 774 F.2d 1344, 1348 (5th Cir. 1985)("A

dismissal for want of jurisdiction bars access to federal courts and is res judicata only

of the lack of a federal court's power to act."); Boone v. Kurtz, 617 F.2d 435, 436 (5th

Cir. 1980); Bui v. IBP, Inc., 205 F. Supp.2d 1181, 1188 (D. Kan. 2002)(noting "that

a judgment dismissing an action for lack of jurisdiction ordinarily has no preclusive

effect on the cause of action originally raised," but instead, will "have preclusive

effect as to matters actually adjudicated, including the precise issue of jurisdiction that

led to the initial dismissal."), citing Matosantos Commercial Corp. v. Applebee's

Intern., Inc., 245 F.3d 1203, 1209 (10th Cir. 2001). Therefore, while the Court's

Order in Johnson I was not a final Judgment on the substance of the Plaintiffs' claims,

there, it was a final Judgment on the question of subject matter jurisdiction.

Nevertheless, the Defendant contends that it did not have a full and fair

opportunity to litigate, in Johnson I, the question of the Court's subject matter

jurisdiction, or the applicability of the Rooker/Feldman doctrine, because the Court

raised those issues sua sponte. See, Defendant's Supplemental Memorandum, supra

at 3. Again, we disagree, and again, where a Court believes that it lacks subject matter

jurisdiction, the issue may be raised sua sponte. See, Bilello v. Kum & Go, LLC, 374

F.3d 656, 659 (8th Cir. 2004)("However, when the record indicates jurisdiction may

be lacking, we must consider the jurisdictional issue sua sponte."), citing GMAC

Commerical Credit LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 828 (8th Cir.

2004), and Thomas v. Basham, 931 F.2d 521, 522-23 (8th Cir. 1991); Johnson v. City

of Shorewood, Minnesota, 360 F.3d 810, 818 (8th Cir. 2004)(noting that the

Rooker/Feldman "doctrine is jurisdictional, [and that] it may be raised sua sponte."),

cert. denied, 543 U.S. 810 (2004), citing Lemonds v. St. Louis County, 222 F.3d 488,

492-93 (8th Cir. 2000), cert. denied sub nom., Halbman v. St. Louis County, 531 U.S.

1183 (2001).

    Here, there is no dispute that the Court, in Johnson I, raised the issue of subject

matter jurisdiction sua sponte.  See, Johnson I, Docket No. 18, at p. 5 n. 3, 2008 WL

2427434 at *2 n. 3 ("Though neither party raised the Rooker-Feldman doctrine in their

briefs, this Court has an independent obligation to consider whether the doctrine

applies.").  Notwithstanding the Defendant's argument to the contrary, the Court's sua

sponte examination of its subject matter jurisdiction did not deprive the Defendant of

a full and fair opportunity to litigate the question.  In Bui v. IBP, Inc., supra at 1185,

the plaintiff's first action was dismissed for lack of subject matter jurisdiction.  In the

plaintiff's second action, the Court concluded that, even though the parties had not

raised or briefed the issue of subject matter jurisdiction, the "plaintiff knew or should

have known that a district court may, at any time, and without motion by a party,

examine or reexamine the issue of its subject matter jurisdiction." Id. at 1186, citing

Rule 12(h)(3), Federal Rules of Civil Procedure. In addition, the Court determined

that the plaintiff had been given a full and fair opportunity to litigate the issue, through

post-Judgment Affidavits, and in his Motion to Amend or Alter the Judgment. Id. As

a result, the Court held that collateral estoppel barred the plaintiff from relitigating the

subject matter jurisdiction question. Id.

Here, the Defendant was, or should have been, fully aware of the Court's ability

to examine its subject matter jurisdiction sua sponte. See, Johnson v. United States,

534 F.3d 958, 964 (8th Cir. 2008)("Because 'there is no statutory procedure upon an

issue of jurisdiction, the mode of its determination is left to the trial court.'"), quoting

Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); McAdams v. McCord, 533 F.3d 924,

927 (8th Cir. 2008)(Federal Courts "will raise jurisdictional issues sua sponte when we

believe we lack jurisdiction, even if the parties do not address the issue."), citing

Thomas v.v. Basham, supra at 523. However, unlike the plaintiff in Bui v. IBP, Inc.,

supra, the Defendant did not file a Motion to Amend or Alter the Judgment, even

though the Defendant could have notified the District Court of its belief that the

Rooker/Feldman doctrine was inapplicable, because there was no prior State Court

Judgment.

- 35 -

Nor will the Defendant suffer any injustice from our conclusion.  As previously noted, "[b]ecause the doctrine of collateral estoppel is flexibly applied, the focus is on whether its application would work an injustice on the party against whom estoppel is urged."  <u>Jeffers v. Convoy</u>, supra at 1339.  Here, the Defendant chose not to inform the Court, in <u>Johnson I</u>, that an error had been made as the foreclosure on the Plaintiffs' property, had not been obtained by recourse to the State Court, but was by advertisement.  We need not determine whether, in making that choice, the Defendant was being "too clever by half," or had made a tactical error, for the application of issue preclusion is not stymied by the fact that the prior Judgment may have been wrong.  As the Supreme Court explained, in <u>Federated Department Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398 (1981):

> Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.  Angel v. Burlington, 330 U.S. 183, 187, 67 S.Ct. 657, 659, 91 L.Ed. 832 (1947); Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); Wilson's Executor v. Deen, 121 U.S. 525, 534, 7 S.Ct. 1004, 1007, 30 L.Ed. 980 (1887).

See also, <u>Bear v. United States</u>, 810 F.2d 153, 157 (8th Cir.1987); <u>Price v. Viking Press, Inc.</u>, 654 F. Supp. 1038, 1041 n. 3 (D. Minn. 1987).

In the words of the Court of Appeals for the District of Columbia Circuit, "[t]he appeal process is available to correct error; subsequent litigation is not." Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir. 1981).

Any claimed injustice arises from the Defendant's elective choices, and not from the application of collateral estoppel. See, Ossman v. Diana Corp., 825 F.Supp. 870, 879 (D. Minn. 1993)(the Court found no unfairness in the application of collateral estoppel when the defendant was forced "to abide by consequences they knew might arise out of their prior tactical decisions," to settle with the plaintiff in the prior action instead of appealing the Court's ruling.); see also, Continental Can Co., U.S.A. v. Marshall, 603 F.2d 590, 596 (7th Cir. 1979)(finding that an issue was actually litigated for collateral estoppel purposes even when a party produces minimal evidence on the issue, because "[a]ny other result would permit a litigant to avoid the conclusive effect of collateral estoppel, by design or by inadvertence, by denoting as irrelevant an issue clearly raised by his opponent and by refusing to introduce evidence on the issue.").

The Defendant maintains that it did not seek a reconsideration of the Court's Order because the decision "appeared to give Defendant all or most of its desired relief." See, Defendant's Supplemental Memorandum, supra at 3-4 n. 1. Even if the

Defendant's position seemed reasonable at that time, it does not change our conclusion that such an election foreclosed any argument that the Defendant did not receive a full and fair opportunity to be heard on the issue of subject matter jurisdiction. See, <u>Ossman v. Diana Corp.</u>, supra at 879; see also, <u>Continental Can Co., U.S.A. v. Marshall</u>, supra at 596. The Defendant had an opportunity to inform the Court of its position but, instead, chose to forfeit its right to be heard. Therefore, we find that the Defendant had a full and fair opportunity to litigate the issue of the Court's subject matter jurisdiction.

In sum, we find that collateral estoppel, that is, issue preclusion, bars the relitigation of this Court's subject matter jurisdiction to consider our authority to consider the merits of the Plaintiff's claim. Had the Defendant properly informed the Court, in <u>Johnson I</u>, that <u>Rooker/Feldman</u> did not apply because of the foreclosure by advertisement, the Defendant would have secured what it now seeks -- a determination of the Plaintiff's claims in this Court. Having elected to follow the route it there chose, the Defendant must live with that decision, and therefore, we recommend that the Plaintiff's Motion be granted, and that this case be remanded to the Minnesota District Court for Clay County.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Plaintiff's Motion for Remand [Docket No. 9] be granted.


Dated:  April 14, 2009                    *s/Raymond L. Erickson*
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE


NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than May**

**1, 2009,** a writing which specifically identifies those portions of the Report to which

objections are made and the bases of those objections.  Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in

the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than May 1, 2009,** unless all interested parties

- 39 -

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.